1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney
2
   BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  CHRISTINA McCALL (CABN 234139)
   Assistant United States Attorney
5      1301 Clay Street, Suite 340S
       Oakland, California 94612
6      Telephone: (510) 637-3680
       christina.mccall@usdoj.gov
7

8  Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. Cr 17-0560 HSG |
| Plaintiff, | [PROPOSED] DETENTION ORDER |
| v. | |
| FRANCISCO VARGAS, JR., | Hearing: November 22, 2017<br>Time: 9:30 A.M.<br>Court: Hon. Kandis A. Westmore |
| Defendant. | |

Defendant Francisco Vargas, Jr. is charged in a one-count indictment with possession of a firearm and ammunition following a felony conviction, in violation of 18 U.S.C. § 922(g)(1). If convicted of this crime, Vargas potentially faces a maximum sentence of 10 years in prison, a $250,000 fine, three years of supervised release, plus a $100 special assessment and forfeiture. Vargas's alleged crime does not carry a rebuttable presumption that no condition will reasonably assure the safety of the community under 18 U.S.C. § 3142(e). However, because the crime involves the possession or use of a firearm, upon motion of the attorney for the Government, the Court must hold a detention hearing. 18 U.S.C. § 3142(f)(1)(E).

Following arrest in this district, at the initial appearance, the United States moved for Vargas's detention, pursuant to 18 U.S.C. §§ 3142(f)(1)(E). The detention hearing took place on November 22, 2017, where attorneys for the Government and Vargas proffered information, and submitted documents

and photographs to the Court. United States Pretrial Services wrote a lengthy, detailed bail study for this case, and recommended that Vargas be detained. The bail study concluded that conditions could be set to mitigate the risk of non-appearance at future court hearings. However, the bail study concluded that no combination of conditions could mitigate the risk of danger to the community that Vargas poses, due to Vargas's extensive criminal history, three weapons convictions prior to this case involving a firearm, prior conviction for voluntary manslaughter, and past revocations of court supervision.

At the hearing, Vargas's brother, adult daughter, and family friend were present, and offered to serve as sureties. None of the proposed sureties who were present at the hearing had criminal convictions. Defense counsel argued that a bond, secured by signatures of the proposed sureties, plus other conditions, such as lockdown at a halfway house or a drug treatment center, would be sufficient to meet the requirements of the Bail Reform Act. Defense counsel emphasized that Vargas is not charged in the instant offense with a crime of violence and had been participating in a collaborative court program in Alameda County since March of 2016. Defense counsel emphasized that an Alameda County case manager for parole reentry court, who has been meeting with Vargas on a weekly basis, sent an email message indicating that Vargas has been compliant with the requests and directives of the reentry court and his treatment team. Defense counsel proffered that the parole reentry court case manager, a former United States Probation Officer, was supportive of Vargas. Defense counsel emphasized Vargas's long residential and family ties to the local area and recent employment with a boss who would like to hire him as a full-time employee. Defense counsel proffered that Vargas has recently been sober and successful in the collaborative court program and that the resources involved in that program would protect the community. Defense counsel proffered that Vargas's prior criminal conduct involved drug abuse so his sobriety mitigates any danger he formerly posed to the community.

Defense counsel proffered that Vargas's murder case in 2001 resulted in two juries that could not reach a verdict, both juries leaning in favor of acquittal. Defense counsel proffered that Vargas's defense at trial involved threats made to Vargas's children, who were 11 and 13 years at the time of the crime. Defense counsel proffered that Vargas was using drugs in 2001 and was depressed over the death of his wife from leukemia. Defense counsel explained that Vargas entered a guilty plea to the lesser-included offense of voluntary manslaughter because he had been in custody for a long period during the

two trials and because he wanted to spare his children testifying at another trial. Defense counsel explained that the reason Vargas possessed the handgun and ammunition in this case (which was in a locked box, to which the key was never found) was to protect his son, who was also an addict. Defense counsel emphasized that Vargas tried to turn himself in to law enforcement and called his supervising probation officer after being caught with the gun in this case. Vargas ultimately arranged his self-surrender to county custody on allegations that he violated the conditions of his Post-Release Community Supervision (PRCS) when he possessed the gun.

The government argued that Vargas should be detained since he poses a serious risk of danger to the community that cannot be controlled by conditions set by the Court. Government counsel emphasized Vargas's lengthy criminal record, which includes convictions of multiple firearms / weapons convictions, a conviction for a crime of violence (voluntary manslaughter with use of a firearm), and use of another person's identity to obtain credit, as well as poor performance on court and community supervision. The government explained that Vargas had successfully completed a residential drug treatment program just prior to allegedly committing the instant offense, which occurred at a Sober Living Environment that houses over 30 other residents, the majority of whom are on probation or parole as a result of felony convictions. The instant offense took place while Vargas was on PRCS from a 2016 Alameda County conviction for being a felon in possession of a firearm. The instant offense also took place while Vargas was participating in the collaborative court program in Alameda County. Government counsel argued that Vargas's decision to bring a loaded .44-caliber Magnum revolver and 50 extra bullets into the residence jeopardized the safety and release status of the other residents.

Government counsel provided the Court and Vargas's counsel with graphic photographs of the murder scene from Vargas's 2001 arrest, ammunition discovered inside Vargas's home in 2001, and a photo of an umbrella stand near Vargas's residence's front door that contained two short barrel shotguns—within reach of Vargas's minor children. The government proffered that the victims were sitting in a parked car when Vargas approached from the sidewalk and shot the male victim in the face, chest and abdomen with a shotgun. The government proffered that the female victim was 21 at the time

of her death, and was trying to climb out the window of the vehicle while Vargas was shooting the male victim. Vargas shot the victims while released on bail from a vehicle theft charge.

Government counsel proffered details of Vargas's 2011 felony conviction for possession of a firearm following a felony conviction, which occurred not long after Vargas's release from his 10-year voluntary manslaughter prison sentence. The government proffered that Vargas lied to police, claiming that a nearby Acura vehicle did not belong to him, even though Vargas had the keys to the Acura on his person and the vehicle was registered to Vargas. Officers found a .45 caliber pistol inside a cloth bag on the back seat of the car, and multiple items with Vargas's name inside the car. The government proffered details of Vargas's 2012 felony conviction for use of another person's identity to obtain credit. In that case, government counsel said that police found a California driver license and Social Security card belonging to a victim whose wallet had been stolen during an armed robbery about three months earlier. The government proffered that that identity theft victim did not know Vargas and did not give him permission to have his license, Social Security Card, or obtain a Costco account using his identity. The victim did not identify Vargas as his robber, but Vargas told police he got the victim's cards from a person who robs and steals from people. The result of that conviction was a 32-month prison sentence.

Government counsel proffered the details of Vargas's 2012 felony conviction for being in possession of brass knuckles. In that case, a probation/parole search of Vargas's residence in Stanislaus County (when Vargas was living with his mother) revealed brass knuckles under Vargas's pillow, a suspected methamphetamine pipe with residue in his closet, and a wooden club belonging to Vargas in his son's vehicle. The government also proffered information about Vargas's 2016 felony conviction for possession of a firearm following a felony conviction in Alameda County. In that case, Vargas possessed an unloaded short-barrel shotgun in the trunk of the vehicle he was driving in Hayward and a billy club in the front driver's area. Vargas was released on PRCS from that firearms conviction when he allegedly committed the instant offense.

Based upon Pretrial Sevices's bail study, the parties' proffers, and the photographs presented to the Court, the Court finds that no conditions can be set to mitigate the danger that Vargas poses to the community. In this case, the factors all weigh in favor of detention based upon risk of danger. The nature and circumstances of the instant offense, which are largely undisputed, weigh in favor of

[PROPOSED] DETENTION ORDER
CR 17-0560 HSG                             4

1  detention. This alleged crime of knowing possession of a firearm and ammunition occurred in the
2  middle of Vargas's collaborative court program, while Vargas had access to all of the program's helpful
3  resources. Despite all the opportunities presented by the collaborative court program, Vargas made a
4  very irresponsible choice to bring a pistol and ammunition into a residence where he endangered all the
5  other residents.

6  Additionally, the evidence proffered is strong, which also favors detention (although this is not
7  the most important factor in the Court's analysis). The Court is concerned that Vargas has a conviction
8  for a crime of violence, namely the voluntary manslaughter conviction with use of a firearm. The Court
9  finds that the government has met its burden to show by clear and convincing evidence that Vargas
10 poses a danger to another person. The Court finds that a bond, and the other conditions recommended
11 by defense counsel are not sufficient to overcome these risks.

## ORDER

Vargas is ordered detained as no condition or combination of conditions in 18 U.S.C. § 3142(c) will reasonably assure the safety of the community as required.

Vargas is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. See 18 U.S.C. § 3142(i)(2). Vargas must be afforded a reasonable opportunity to consult privately with counsel. See 18 U.S.C. § 3142(i)(3). On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver Vargas to the United States Marshal for a court appearance. See 18 U.S.C. § 3142(i)(4).

IT IS SO ORDERED.

DATED: 12/7/17

*Kandis Westmore*

HON. KANDIS A. WESTMORE
United States Magistrate Judge